EDUARDO ARRECHE CUEVAS, Plaintiff and Appellee, *v.* PORTO RICO RAILWAY, LIGHT & POWER Co., Defendant and Appellant.

No. 4520. Argued November 22, 1929.—Decided December 13, 1929.

J. H. Brown, G. E. González and C. Ruiz Nazario, for appellant. M. Benítez Flores, for appellee.

Mr. Justice Aldrey delivered the opinion of the court.

The death by accident of the four-year old child Salvador Arreche occurred on November 15, 1917, between 6:30 and 7 o'clock p. m. in Park street of the ward of Santurce, in the city of San Juan, and the resulting action for damages gave rise to an appeal heretofore heard by us (31 P.R.R. 424). Thereafter, at the end of 1925, the child's father filed an amended complaint alleging that his son was killed by a street car of the defendant in consequence of the negligence of its employees, who operated the car at an excessive rate of speed, sounding no warning, carrying no headlight on the car, and without stopping or slowing up when approaching the intersection at Vereda Estrecha street and Antonsanti avenue.

The defendant resisted the claim, and after a trial, a judgment was rendered against the defendant from which the present appeal has been taken.

For a better understanding of how that death occurred, it would seem advisable to give here a brief description of the place of the accident and of certain facts established by the evidence.

There is a street in Santurce connecting the place called "El Parque" with Road No. 1 at an intersection known as Stop 23. That street is called Park or Egozcue street. Going from "El Parque" to Stop 23 there are several stops for taking on and leaving passengers, numbered from 44 to 41 inclusive, the former situated near "El Parque" and the latter next to Stop 23; and there is between stops 41 and 23 a siding for the crossing of the electric cars. The railway tracks are laid, following that direction, on the left-hand side of the street and very close to the houses on that side. Stop 42½ is the nearest to be found before reaching house No. 21, in which appellee and his family were living, situated at the foot of an incline or grade which starts at Stop 44. The distance between the railway track and the wall-fence of the house is about one meter. Beyond the house, on the right, is the entrance to Antonsanti avenue and a little farther, on the left, is the entrance to Vereda Estrecha street. A short distance further lies the beginning of San Mateo street at Stop 41, followed by the siding, and lastly Stop 23 on Road No. 1. Between the track and the houses on the left-hand side of Park street there is no sidewalk. House No. 21 is situated on high ground and has a brick fence or wall a few feet high, with an opening for a staircase leading into the house, the first step of which lies between the wall and the track. A child of tender age coming down that staircase or who is sitting thereon can hardly be seen from an approaching street car or by people walking along the left-hand side of the street. The house where the child Salvador Arreche lived has a front balcony which communicated with another

balcony on the side. Facing the house there is a public school and a public street light.

On the day and hour above stated, at dusk, one of defendant's electric cars was traveling from "El Parque" towards Stop 23. It was ascending the grade in that direction, with its interior lights on, and stopped to take on two passengers at Stop 42½, where Hospital street joins Park street, some fifty meters before reaching house No. 21. The car then went on, passing Antonsanti avenue, Vereda Estrecha street (Stop 42) and San Mateo street (Stop 41), and finally stopped at the siding already mentioned, where the motorman, the conductor and the passengers learned that the street car had run over the child Salvador Arreche, who died shortly thereafter from injuries received. It also appears from the evidence that on the day and at the hour above mentioned there was not much traffic of pedestrians at the place of the accident, and the school was closed.

The trial court based its judgment against the defendant on the ground of negligence on the part of the defendant's employees, in that the car was traveling at an excessive rate of speed when passing in front of plaintiff's house and the motorman did not slow up or make any attempt to reduce the speed; in that the car did not make the obligatory stops at Stop 42 or at San Mateo street, nor stop or slow up when passing Antonsanti avenue and Vereda Estrecha street; in that the car carried no headlight, and, at the moment of the accident and notwithstanding the warning shouts of several persons, the motorman did not stop the car until it reached Stop 23. The lower court also found that the child, who was with his sister and a twelve-year-old female servant in the balcony of the house, descended the front steps and stood in the track, and that if the car had carried a headlight, the child would have been seen by the motorman, who could then have exercised all diligence to avoid the accident. It is contended by the appellant that the foregoing findings are erroneous.

From the evidence and from the grounds of the judgment appealed from the conclusion must be reached that the child was not seen by the motorman on the track or near it at the time of the accident, which caused the child's death; and also that the motorman was not inattentive to his duties.

The evidence as to whether or not the electric car carried a headlight was conflicting, but as the trial court adjusted the conflict in the negative we have to accept that finding, since there are not sufficient grounds for holding otherwise.

The fact that the electric car, which caused the child's death, did not carry a headlight, can not be considered by itself as the proximate cause of the accident, under the attendant circumstances, since the place where the accident occurred was well lighted by a public street lamp, which was lighted at the time and which enabled one to see fairly well without any assistance from the car's headlight. The evidence did not show the intensity of the car's headlight when lighted, nor has it been shown to us that such headlight is required by any statute or ordinance. In *People* v. *Vargas,* 30 P.R.R. 474, we held that although the law requires that automobiles parked at night in the streets, alleys or highways shall have certain lights for the purpose of avoiding accidents, that purpose is met when, although the vehicle itself has no lights, there is sufficient light at the place to make the automobile visible.

Considering that the electric car stopped at Stop 42½ to take on passengers, some fifty meters from the house where the child lived; that the car was going up a grade or incline which ends in front of said house; and that, as some witnesses testified, when an electric street car is going uphill it can not travel fast, even though given all the speed up to nine points, which seems natural, we think that it would have been more reasonable for the trial court to have found that the electric car was not then traveling very fast. But we will accept the conclusion reached by that court that the car was traveling at an excessive rate of speed, in order to con-

sider the effect of such assumed fact, notwithstanding that the statements from witnesses to the effect that the car was going at a great velocity, very fast, and the like, are merely relative and entirely too uncertain and vague to serve as a basis for the finding that the speed was in excess of the rate dictated by the demands of ordinary prudence, as was held in *Diamond* v. *Weverhaenser*, 178 Cal. 540.

The case of *Olavarría* v. *P. R. Ry., Light & Power Co.*, 26 P.R.R. 584, is very similar to the case at bar, as it also involved an electric car belonging to the same defendant, whose track is laid down on the public highway very close to the houses adjacent thereto, and we held in that case that mere great velocity of travel is not negligence *per se,* but some other element must concur, or at least it must be shown that the excessive speed was the proximate cause of the accident, and that in the absence of an express regulation limiting the rate of speed of street cars, the mere fact that a car is running at a rapid rate does not establish that it is being run in a negligent manner.

In the case herein the speed of the car was not the proximate cause of the child's death, because, as the child was not seen by the motorman before the accident, the latter would have happened anyway, even though the car had not been running at a great velocity. Besides, there is no showing from the evidence herein of the existence of any express regulation of the speed to be maintained at that place. For the same reason that he did not see the child, the motorman did not stop or attempt to stop the car at the said place. Nor need the facts be considered that the motorman did not stop at the obligatory Stop 42 or that he did not reduce the speed when passing Antonsanti avenue and Vereda Estrecha street, since those places lie beyond the child's house, and the omissions pointed out could not be the proximate cause of the child's death. Nor could the motorman's failure to stop the car after the accident, notwithstanding the shouts

from somebody to do so, be the proximate cause, since the accident had already happened, and this, granting that the shouts were heard.

As regards the motorman's alleged failure to ring the alarm bell—as to which the evidence was also conflicting—it has not been shown that it was his duty, imposed by law or ordinance, to ring the bell at that place or elsewhere on the street, where the majority of buildings are very close to the track on one side; nor can it be inferred from the evidence that, considering the age of the child, if the bell had been sounded, the child would not have been run over by the car.

What is shown to have really happened in the present case is that, shortly before his death, the child Salvador Arreche was in the front balcony of his home, playing with a little sister and under the care of a maidservant; that the latter, who had to go on the side balcony to look after the little girl, left the other child unattended in the front balcony, and the child then went into the street, either to join two of his brothers who were playing on the sidewalk of the school, or for some other purpose proper of a child; that this occurred just at the moment that one of defendant's electric cars was passing the place, and the motorman, due to the shape of the staircase leading into the street and the proximity of the track and of the car to the fence or wall of the house, did not see the child before the accident happened. These facts demonstrate that the occurrence was an unfortunate and unavoidable accident, no doubt deeply lamented by the child's parents, but which imposes no liability upon the appellant, since the child's death was not caused by the fault or negligence of its employees.

By virtue of the foregoing, the judgment appealed from must be reversed and another rendered dismissing the complaint, without special pronouncement of costs.

Mr. Chief Justice Del Toro dissented.

Mr. Justice Texidor, concurring.

I agree with the judgment, but not with some of the grounds stated in the opinion.

If there was any express regulation as to the speed to be maintained when passing over the place of the accident, or any duty imposed by law or ordinance as to ringing the bell at that place, the failure to comply with such existing regulation or provision would constitute negligence. In the absence of such regulation, statute or ordinance, the ommission must then be considered with reference to the doctrine of negligence or lack of ordinary care, required under the circumstances.